## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUNNY MEADOWS DAIRY<br>& FOODS, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number CIV-05-227-C |
| | ) | |
| PEERLESS INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant | ) | |
| and Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHUBB CUSTOM INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Third-Party Defendant, | ) | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are two motions: a Motion for Partial Summary Judgment filed by Plaintiff Sunny Meadows Dairy & Foods, Inc. (Sunny Meadows), and a cross-Motion for Summary Judgment filed by Defendant Peerless Insurance Company (Peerless). The Court considered the submissions of the litigants and now **DENIES** Sunny Meadows' Motion for Partial Summary Judgment and **GRANTS** Peerless's cross-Motion for Summary Judgment.

## BACKGROUND

Under the authority of 28 U.S.C. § 1332, the diversity statute, Sunny Meadows commenced this action sounding in contract and in tort. Sunny Meadows alleges that Peerless breached the provisions of its Commercial Property Insurance Policy (Policy) by denying a claim covered under the Policy. Sunny Meadows also alleges that Peerless breached the duty of good

faith and fair dealing by refusing to pay the covered claim, and by its overall unreasonable handling of the claim. Peerless contends that the Policy does not provide coverage for Sunny Meadows' claim, and that it neither breached the Policy nor acted in bad faith in any manner. Sunny Meadows seeks partial summary judgment on the sole and narrow issue of whether the Policy provides coverage for dairy equipment destroyed by fire. Peerless seeks summary judgment on both the contract and tort claims.

In December 1999, Sunny Meadows leased both a dairy manufacturing plant and the equipment in the dairy plant from International Media and Cultures, Inc. (IMAC)[1]; the dairy plant is located in Oklahoma City, Oklahoma. (Pl.'s Mot. Partial Summ. J., Dkt. No. 14, at 2 ¶ 2.) In October, 2002 the litigants amended certain provisions within the Sunny Meadows/IMAC lease (Lease) via a written addendum. (Id. ¶ 4.) Subsequent to leasing the dairy plant, Sunny Meadows purchased Policy number "CPB 9792386" from Peerless which insured Sunny Meadows' "Business Personal Property" located at the Oklahoma City dairy plant. (Id. ¶ 1.) In July 2004, the plant suffered a fire which destroyed a very large, heavy, and expensive piece of dairy equipment known as a "bag house." (Id. ¶ 6; Def.'s Mot. Summ. J., Dkt. No. 18, at 2; id. Ex. 2.) Sunny Meadows submitted a claim under the Policy to Peerless for approximately $750,000.00—the full replacement value of the leased bag house. (Pl.'s Resp., Dkt. No. 25, Exs. 10, 11.) Peerless acknowledged coverage under Policy § A(1)(b)(6) for Sunny Meadows' use-interest in the improvements and betterments Sunny Meadows made to the leased bag house and proffered payment of $200,000.00. (Def.'s Resp., Dkt. No. 17, at 4, ¶ 6; id. Ex.

---

[1] IMAC is not a party to this action.

9.)  Nevertheless, Peerless refused to pay the full replacement value of the leased bag house.

(See id.)  The litigants reached an impasse concerning the extent of the Policy's coverage for the

leased bag house; therefore, Sunny Meadows commenced the instant action.

### STANDARD OF REVIEW [2]

FED. R. CIV. P. 56(a) and (b) authorize both Sunny Meadows and Peerless to move the

Court for summary judgment by showing that "there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

How the moving party may demonstrate that it is entitled to summary judgment depends upon

which party bears the burden of persuasion at trial.  Anderson v. Dep't of Health & Human

Servs., 907 F.2d 936, 947 (10th Cir. 1990).   When the moving party bears the burden of

persuasion at trial, the moving party must put forth evidence demonstrating that it would be

entitled to a directed verdict.  Id.  A successful demonstration shifts the burden of production to

the non-moving party who, in turn, must go beyond the pleadings and submit evidence

demonstrating the existence of a genuine issue worthy of trial in order to defeat summary

judgment.  Id.

---

[2] In a diversity case, the Court applies the substantive law of Oklahoma, including its choice of law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  The Court finds that the Policy's place of performance is Oklahoma as coverage is explicitly limited to one building located in Oklahoma City, Oklahoma.  Therefore, Oklahoma law governs the Court's interpretation of the Policy. 15 OKLA. STAT. § 162; Rhody v. State Farm Mut. Ins. Co., 771 F.2d 1416, 1420 (10th Cir. 1985).  In the alternative, Sunny Meadows cited to Oklahoma law in support of its arguments and Peerless neither raised the choice of law issue nor contested Sunny Meadows' use of Oklahoma law.  Therefore, the Court finds that the litigants have acquiesced to the Court's construction and application of the Policy under Oklahoma law.  See Flying J Inc. v. Comdata Network, Inc., 405 F.3d 821, 832 n.4 (10th Cir. 2005).

When the non-moving party bears the burden of persuasion at trial, the moving party may demonstrate it is entitled to summary judgment by two alternative means. First, the moving party may submit evidence negating an element of the non-moving party's claim. 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2727 (3d ed. 1998). Second, the moving party may point out to the Court that the non-moving party lacks sufficient evidence on an essential element of his claim. Id.

The Court's function at the summary judgment stage is not to weigh the evidence but to determine whether there is a genuine issue worthy for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). "An issue is 'genuine' if [viewing the full record] there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to create a dispute of fact that is 'genuine' . . . ." Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." See Adler, 144 F.3d at 670 (citing Anderson, 477 U.S. at 248). When deciding whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Anderson, 477 U.S. at 255; Simms v. Okla. ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999).

Within the context of cross-motions for summary judgment, the litigants do not necessarily concede the absence of a genuine issue of material fact in dispute. Nafco Oil & Gas,

Inc. v. Appleman, 380 F.2d 323, 324-25 (10th Cir. 1967).  The Court is to consider each motion

on its own merits; "the denial of one does not require the grant of another."  Buell Cabinet Co.,

Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir. 1979).  When adjudicating the motions, the Court

is authorized to assume that there is no additional evidence which needs to be considered other

than that filed by the litigants; nevertheless, summary judgment is inappropriate if any material

fact is still in dispute.  Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148

(10th Cir. 2000).

**DISCUSSION**

**I.      Sunny Meadows' Motion for Partial Summary Judgment.**

The litigants' dispute centers upon whether the Policy provides full replacement value

coverage for Sunny Meadows' leased bag house destroyed in the dairy plant fire.  Accordingly,

the Court turns to the controlling provisions of the Policy.

A.      Coverage under the Policy.

The Policy dictates coverage for Sunny Meadows' Business Personal Property in the

following language:

> **A.      Coverage**
> We will pay for direct physical loss of or damage to Covered Property at
> the premises described in the Declarations caused by or resulting from any
> Covered Cause of Loss.
>
> **1.      Covered Property**[ 3 ]

---

[3]  The "Building and Personal Property Coverage Form" actually dictates three types of
"Covered Property" available for purchase:  (1) "Building," described in § A(1)(a); (2) "Your
Business Personal Property," described in § A(1)(b); and (3) "Personal Property of Others,"
described in § A(1)(c).  According to the Policy's "Declarations," Sunny Meadows only purchased
coverage under § A(1)(b), "Your Business Personal Property."

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.**, . . . if a Limit of Insurance is shown in the Declarations for that type of Property.

. . . .

**b.** **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

**(1)** Furniture and fixtures;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** Labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

**(a)** Made a part of the building or structure you occupy but do not own; and

**(b)** You acquired or made at your expense but cannot legally remove;

**(7)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

(Pl.'s Br., Ex. 1, § A(1)(b).)  Sunny Meadows maintains that the Policy provides for full coverage of the leased bag house under three separate provisions of § A(1)(b), "Business Personal Property:"  (1) "Furniture and fixtures;" (2) "Machinery and equipment;" and (7) "Leased personal property for which you have a contractual responsibility to insure."[4] Therefore, Sunny Meadows concludes that Peerless should pay for the leased bag house's full

---

[4] Although both parties mention Policy § A(1)(b)(6) in their briefs, Sunny Meadows is not disputing the Policy's coverage or Peerless's $200,000.00 payment under Policy § A(1)(b)(6). (Pl.'s Reply, Dkt. No. 27, at 4.)

replacement value.  On the other hand, Peerless asserts that Sunny Meadows' full replacement value claim must fail as Sunny Meadows neither personally owned the bag house nor had a contractual responsibility to insure it.

Sunny Meadows and Peerless are free to contract for insurance against any risks they see fit to cover, but, upon the contract's formation, they are bound by its terms.  Wiley v. Travelers Ins. Co., 1974 OK 147, ¶ 16, 534 P.2d 1293, 1295.  When adjudicating a dispute over the Policy's language, the Court must first determine as a matter of law if the language in dispute is ambiguous.  Cranfill v. Aetna Life Ins. Co., 2002 OK 26, ¶ 5, 49 P.3d 703, 706.  Disputed language is not ambiguous merely because the litigants disagree as to its interpretation or offer differing constructions of its provisions.  Pitco Prod. Co. v. Chaparral Energy, Inc., 2003 OK 5, ¶ 14, 63 P.3d 541, 545-46.  When deciding whether the Policy is ambiguous, the Court views the Policy as a whole and gives effect to all its provisions without concentrating solely on one clause or pulling its language out of context.  Id. ¶ 14, 63 P.3d at 546; see also 15 OKLA. STAT. § 157 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others.").  Consequently, the Court will neither indulge in strained interpretations to create and then construe an ambiguity in the Policy nor undertake to rewrite the Policy.  Pitco Prod. Co., ¶ 20, 63 P.3d at 548 n.34.

If the Policy's disputed language is clear and unambiguous, "the court [then] is to interpret it as a matter of law, giving effect to the mutual intent of the parties at the time of contracting."  Id. ¶ 12, 63 P.3d at 545 (footnotes omitted).  The Policy's language is the only legitimate evidence as to what the litigants intended; thus the Court may not go outside the

"four-corners" of the Policy when discerning the litigants' rational and general intent.  Id. ¶ 14, 63 P.3d at 546.  The Court must give the Policy's terms their plain, popular, and ordinary meaning unless technical terms are used and intended to convey a specific technical meaning, in which case the latter is to be followed.  Id.; 15 OKLA. STAT. § 160.  "The construction of an insurance policy should be a natural and reasonable one, fairly construed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." Wiley, ¶ 16, 534 P.2d at 1295.

Here, the litigants do not argue that § A(1)(b), "Your Business Personal Property," is ambiguous; they merely differ as to its scope of coverage with regard to the leased bag house. The Court's examination of the Policy as a whole reveals that § A(1)(b) is not ambiguous because it is not susceptible to two reasonable interpretations.  Pitco, 2003 OK 5, ¶ 14, 63 P.3d at 545-46.  Accordingly, the Court interprets § A(1)(b) as a matter of law.  In so doing, the Court will address Sunny Meadows' arguments in reverse order.

        1.     Full Replacement Value Coverage under Business Personal Property Provision (7).

Sunny Meadows argues that the 2002 addendum to the Lease contractually obligated Sunny Meadows to insure the leased bag house along with all other dairy plant equipment; therefore, the Policy provides coverage for the full replacement value of the leased bag house under § A(1)(b)(7) as "Leased personal property for which [Sunny Meadows has] a contractual responsibility to insure."  Sunny Meadows claims the following addendum language created its obligation to insure the leased bag house:  "Taxes and Insurance:  IMAC agrees to pay the premium on the $500,000 increased coverage on the equipment in the plant."  (Pl.'s Mot. Partial

Summ. J., Ex. 3.)  Sunny Meadows asserts that the addendum's language is not ambiguous, but, in case the Court finds it to be so, submits two affidavits from the Presidents of both Sunny Meadows and IMAC to demonstrate the intent of the parties to that contract.  The affidavits state that both Sunny Meadows and IMAC intended the addendum to obligate Sunny Meadows to purchase the necessary equipment insurance and for IMAC to reimburse a certain amount of the premiums.  (Id. Exs. 4, 5.)

After reviewing the Lease and its addendum as a whole, the Court agrees with Sunny Meadows that the addendum is not ambiguous.  As a result, the Court will not go beyond the "four-corners" of the modified Lease and utilize Sunny Meadows' extrinsic evidence to discern intent at the time of signing the addendum—the addendum's plain language is the only legitimate evidence as to what Sunny Meadows and IMAC intended.  Pitco, 2003 OK 5, ¶ 14, 63 P.3d at 546.

On its face, the addendum's plain language only obligates IMAC to pay certain insurance premiums.  The addendum neither creates an obligation for Sunny Meadows to insure the dairy plant's equipment nor alters the Lease's original provision that IMAC be responsible for its own casualty insurance (see Pl.'s Mot. Partial Summ. J., Ex. 2, at 3 ¶ 8.).  Therefore, the Court finds that Sunny Meadows did not have a contractual obligation to insure the leased bag house.  Sunny Meadows' argument that provision (7) provides full coverage must fail.

2.    Full Replacement Value Coverage under Business Personal Property Provision (1) and Provision (2).

Sunny Meadows contends that its leasehold interest in the bag house is an insurable interest.  Sunny Meadows further contends that the leased bag house falls under either "Business

Personal Property" coverage provision (1) "Furniture and Fixtures," or provision (2) "Machinery and Equipment."  Sunny Meadows therefore concludes that the Policy provides coverage for the full replacement value of the leased bag house.  Sunny Meadows' argument fails because it assumes the very thing it must prove—that Policy § A(1)(b) covers property leased without a duty to insure.

Here, by staying within the "four-corners" of the Policy, construing the Policy as a whole, and using each clause to interpret the others, it is clear that the litigants intended for § A(1)(b) to only provide coverage for tangible, physical property Sunny Meadows either owned or leased with a duty to insure.  This conclusion is firmly girded by the language of § A(1)(b) and the structure of the Policy's "Building and Personal Property Coverage Form."

a.      § A(1)(b) Covers Tangible, Physical Property.

That § A(1)(b)'s focus is on tangible, physical property, as opposed to an intangible leasehold interest, is evidenced by the use of the adjective "personal" in conjunction with the noun "property."  The litigants do not define "personal" in the Policy; thus the Court gives the term its plain and ordinary meaning.  Pitco, 2003 OK 5, ¶ 14, 63 P.3d at 546.  When used as an adjective and linked to the noun "property," the term "personal" is defined as "Relating to a person's movable property: *personal possessions*."  THE AMERICAN HERITAGE DICTIONARY 1311 (4th ed. 2000). See also id. (defining the phrase "personal property" as "Temporary or movable property.")  That § A(1)(b)'s focus is on tangible, physical property is further girded by § A(1)(b)'s requirement that Sunny Meadows' business personal property be "located *in or*

-10-

*on* the building described in the Declarations *or in the open (or in a vehicle)* within 100 feet of

the described premises." (emphasis added).

> b.    § A(1)(b) Requires Either Ownership of the Tangible, Physical
> Property Insured or Property Leased with a Duty to Insure.[5]

That § A(1)(b) requires the insured to own the tangible, physical property is evidenced

by the use of the adjective "your."  The litigants do not define "your" in the Policy; thus the

Court gives the term its plain and ordinary meaning. <u>Pitco</u>, 2003 OK 5, ¶ 14, 63 P.3d at 546.

"Your" is defined as "The possessive form of you . . . . Used as a modifier before a noun: *your*

*boots; your accomplishments* . . .  A person's; one's:  . . . ." THE AMERICAN HERITAGE

DICTIONARY 1997 (4th ed. 2000).  That § A(1)(b) requires the insured to own the tangible,

physical property is further girded by the structure of the "Building and Personal Property

Coverage Form."  Section A(1)(a) covers the building itself, that is, real property, § A(1)(b)

covers the insured's business personal property, and § A(1)(c) covers the personal property *of*

*others* that is in the insured's care, custody, or control and also located in or on the covered

building.[6]   Property which Sunny Meadows leased *without* a duty to insure would be

encompassed within the terms of § A(1)(c)—a form of insurance Sunny Meadows did not

purchase.  If Sunny Meadows' argument—that the bag house leased without a duty to insure is

still covered under § A(1)(b)—were true, it would rewrite § A(1)(b) to cover property expressly

---

[5] As discussed above, provision (7), property leased with a duty to insure, is inapplicable;
therefore, the Court does not address it in this context.

[6] "**c.  Personal Property Of Others** that is:  (1) In your care, custody or control; and
(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within
100 feet of the described premises."  § A(1)(c).

covered under § A(1)(c) and effectively render the terms of § A(1)(c) null.  The Court, however, may neither rewrite the terms of the Policy, <u>Cranfill</u>, 2002 OK 26, ¶ 5, 49 P.3d at 706, nor interpret the Policy as a whole in such a way as to bring about an absurd result, <u>Wiley</u>, 1974 OK 147, ¶ 16, 534 P.2d at 1295.

When the Policy is viewed in the light of common sense and given a natural and reasonable construction, it is clear that the litigants intended § A(1)(b), "Your Business Personal Property," to provide coverage for tangible, physical property Sunny Meadows either owned or leased with a duty to insure.  <u>Wiley</u>, ¶ 16, 534 P.2d at 1295.  Here, Sunny Meadows' lease, which did not contain a duty to insure, merely procured the right to use and temporarily possess the bag house.  Therefore, Sunny Meadows' argument that provisions (1) and (2) provide full replacement value coverage must fail.

After applying Oklahoma's principles of contract construction, the Court finds as a matter of law that the Policy does not provide coverage for the full replacement value of the leased bag house under "Business Personal Property" § A(1)(b)(1), (2), or (7).  Sunny Meadows' motion for partial summary judgment is denied.

## II.     Peerless's Motion for Summary Judgment.

A.     <u>Sunny Meadows' Breach of Contract Claim.</u>

Sunny Meadows alleges that Peerless breached the Policy by denying a covered claim for the full replacement value of the leased bag house.  However, Peerless could not have breached the Policy by denying a claim for coverage that, as discussed above, did not exist.  <u>E.g.</u>, <u>Benns v. Cont'l Cas. Co.</u>, 982 F.2d 461 (10th Cir. 1993) (affirming summary judgment for

insurer on plaintiff's breach of contract claim when, under New Mexico law, policy's unambiguous language did not afford coverage). Therefore, Peerless is entitled to judgment as a matter of law on Sunny Meadows' breach of contract claim.

      B.      <u>Sunny Meadows' Bad Faith Tort Claim.</u>

Sunny Meadows also alleges that Peerless breached its duty of good faith and fair dealing by failing to pay a claim covered under the Policy, and by failing to fairly and promptly evaluate, investigate, negotiate, and finally settle Sunny Meadows' claim. However, Sunny Meadows cannot sustain a bad faith tort claim absent a valid claim of liability under the Policy. <u>Davis v. GHS Health Maint. Org., Inc.</u>, 2001 OK 3, ¶ 16, 22 P.3d 1204, 1210. Therefore, Peerless is also entitled to judgment as a matter of law on Sunny Meadows' bad faith tort claim.[7]

## CONCLUSION

For reasons delineated above, the Court finds as a matter of law that the Policy does not provide full replacement value coverage for the leased bag house. Furthermore, the Court finds that there are no genuine issues of material fact in dispute and that Peerless is entitled to judgment as a matter of law on Sunny Meadows' breach of contract and bad faith claims.

---

[7] In its motion for summary judgment, Peerless argues that the Oklahoma Supreme Court enunciated the new legal standard of "dishonest intent or the taking of unconscientious advantage" for bad faith tort claims in <u>Badillo v. Mid Century Ins. Co.</u>, 2004 OK 42, __ P.3d __, 2004 WL 1245292 (<u>Badillo I</u>). However, subsequent to Peerless filing its response, the Oklahoma Supreme Court withdrew the <u>Badillo I</u> opinion, leaving intact the pre-existing legal standard for bad faith. <u>Badillo v. Mid Century Ins. Co.</u>, 2005 OK 48, __ P.3d __, 2005 WL 1458637 (<u>Badillo II</u>). Even if the Oklahoma Supreme Court had not withdrawn <u>Badillo I</u>, Peerless's reliance on the opinion would have been premature because the Oklahoma Supreme Court never issued the mandate for the opinion's publication. Because <u>Badillo I</u> was not published, the opinion never became part of Oklahoma's common law and could not be cited as Oklahoma's authoritative interpretation of the tort of bad faith. OKLA. SUP. CT. R. 1.200(c), (d).

Therefore, Sunny Meadows' Motion for Partial Summary Judgment (Dkt. No. 14) is **DENIED** and Peerless's cross-Motion for Summary Judgment (Dkt. No. 18) is **GRANTED**.    Peerless shall file a pleading within ten days showing cause why its Third-Party Complaint against Chubb should not be dismissed as moot, in light of this ruling.  Judgment will enter when all claims have been resolved.

IT IS SO ORDERED this 26th day of July, 2005.

ROBIN J. CAUTHRON
United States District Judge